**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

FILED BY SCN D.C.
JUN 01 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

Case No.: 2:26-cv-14147-AMC

**ROBIN EARL PAULK,**
Plaintiff,
v.
**LARVA LABS, LLC,**
Defendant.

---

# PLAINTIFF'S OMNIBUS MOTION TO REMAND AND INCORPORATED MEMORANDUM OF LAW

(Filed Pursuant to 28 U.S.C. § 1447(c))

**THIS COURT MUST RULE ON JURISDICTION BEFORE ANY SUBSTANTIVE MOTION — NOTHING HEREIN WAIVES PLAINTIFF'S RIGHT TO REMAND OR SUBMITS TO FEDERAL JURISDICTION**

## I. PRELIMINARY STATEMENT AND ASSERTION OF NON-WAIVER

Plaintiff ROBIN EARL PAULK, appearing pro se, respectfully moves this Court pursuant to 28 U.S.C. § 1447(c) to remand this action immediately to the Tenth Judicial Circuit in and for Highlands County, Florida, Case No. 282026CA000036GCAXMX, before the Honorable Heather Elizabeth Beato.

Remand is required on two independently sufficient and incurable grounds: (1) Defendant's Notice of Removal was filed twenty-eight (28) days after the mandatory, non-extendable statutory deadline under 28 U.S.C. § 1446(b); and (2) this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. Either ground alone compels remand. Together they make it unavoidable.

Plaintiff submits this Motion strictly to contest the procedural validity of Defendant's removal and to establish this Court's lack of jurisdiction. Every argument, every exhibit, every citation, and every factual recitation herein is made solely for that purpose. Nothing in this filing constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal

subject matter jurisdiction, or any acknowledgment that removal was timely or proper. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant.

◆ *NON-WAIVER DECLARATION: The arguments set forth regarding this preliminary statement and all arguments that follow are presented solely to demonstrate this Court's lack of subject matter jurisdiction and the mandatory nature of remand under 28 U.S.C. § 1447(c). Nothing herein constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal jurisdiction, or any acknowledgment that Defendant's removal was timely, proper, or lawful. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant. Plaintiff expressly preserves all rights under 28 U.S.C. § 1447(c).* ◆

## II. STATEMENT OF UNASSAILABLE PROCEDURAL FACTS

The following chronology is established by the state and federal docket records and is not subject to reasonable dispute:

1. January 15, 2026 — Plaintiff filed his Verified Complaint in the Tenth Judicial Circuit, Highlands County, Florida (Case No. 282026CA000036GCAXMX).

2. January 29, 2026 — Plaintiff's process server attempted personal service at Defendant's designated corporate address: 234 Fifth Avenue, Floor 2, New York, NY 10001. The mail hub attendant confirmed Larva Labs had not received forwarded mail at that location for the past 2–3 years. The facility is a commercial shared-office and mail forwarding hub operated by The Yard — not a functioning corporate office.
   **► EXHIBIT 3 — Affidavit of Non-Service — 234 Fifth Avenue, Floor 2, New York, NY 10001**

3. January 29, 2026 (Same Day) — General Counsel Mordecai P. Goldstein, nationally advertised as Larva Labs' active General Counsel, maintains his professional address at 246 Fifth Avenue, New York, NY 10001 — the exact same building, the exact same mail hub facility. The shared mail attendant could have received, signed for, and delivered Plaintiff's legal process to Suite 246 that same day.

**▶ EXHIBIT 3B — Goldstein General Counsel Profile — 246 Fifth Avenue — Same Building — The Yard Mail Hub**

4. March 3, 2026 — Plaintiff perfected Substituted Service of Process via the Florida Division of Corporations pursuant to Fla. Stat. §§ 48.161 and 48.181. This is the legally operative date of service and the trigger date for the 30-day removal clock under 28 U.S.C. § 1446(b).
**▶ EXHIBIT 1 — Certified Return of Substituted Service — Florida Division of Corporations — March 3, 2026**

5. April 2, 2026 — The mandatory 30-day removal window under 28 U.S.C. § 1446(b) expired. Defendant filed nothing.

6. April 13, 2026 — The Clerk of the Tenth Judicial Circuit entered a binding Clerk's Default against Defendant. This default was never set aside in state court. It transferred to this Court upon removal and remains in full force.
**▶ EXHIBIT 2 — Certified Copy of Highlands County Clerk's Default — April 13, 2026**

7. April 22, 2026 — Plaintiff filed his Motion for Default Final Judgment, supported by an Affidavit of Damages establishing total damages of $9,159,898.44.

8. April 23, 2026 — The NODE Foundation forwarded to Larva Labs a courtesy copy of the Complaint that Plaintiff had voluntarily sent to the NODE Foundation as a third-party notice — not as formal process, not as service of any kind.

9. April 30, 2026 — Twenty-eight (28) days after the removal deadline and seventeen (17) days after the Clerk's Default, Defendant filed a delinquent Notice of Removal (ECF No. 1).

10. May 28, 2026 — Plaintiff transmitted formal notice of this remand filing. Defendant explicitly refused consent.
**▶ EXHIBIT 8B — Remand Notice — Email Exchange — May 28, 2026**

◆ *NON-WAIVER DECLARATION: The arguments set forth regarding the procedural timeline in Section II are presented solely to demonstrate this Court's lack of subject matter jurisdiction and the mandatory nature of remand*

*1447(c). Nothing herein constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal jurisdiction, or any acknowledgment that Defendant's removal was timely, proper, or lawful. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant. Plaintiff expressly preserves all rights under 28 U.S.C. § 1447(c).* ◆

## B. DEFENDANT CANNOT CLAIM 'NO NOTICE' — GENERAL COUNSEL WAS IN THE SAME BUILDING

### THE DELIBERATE OMISSION OF MORDECAI GOLDSTEIN EVIDENCES CONSCIOUSNESS OF THE NOTICE DEFECT

### 1. 234 and 246 Fifth Avenue — One Building, One Mail Hub, One Attendant

Defendant's Motion to Vacate relies entirely on a claim of no notice — that it never received the Complaint because its registered address at 234 Fifth Avenue, Floor 2 was unmonitored. This argument collapses under examination of a single fact: Defendant's nationally advertised General Counsel, Mordecai P. Goldstein, maintains his professional address at 246 Fifth Avenue — the exact same building, the exact same shared commercial mail hub operated by The Yard.

Both Suite 234 (Larva Labs) and Suite 246 (Goldstein) operate within the same physical facility, processed by the same mail attendant at the same reception desk. That attendant had the authority and the physical means to receive, sign for, and deliver Plaintiff's legal process to either suite on the day it arrived. Defendant had a built-in corporate mechanism — its own General Counsel, in the same building — for receiving exactly this type of legal document. The failure to use it was a deliberate choice, not an unavoidable circumstance.

**► EXHIBIT 3 — Affidavit of Non-Service — 234 Fifth Avenue, Floor 2 — The Yard Mail Hub**

**► EXHIBIT 3B — Goldstein GC Profile — 246 Fifth Avenue — Same Building Documentation**

### 2. The Deliberate Omission of Goldstein from Defendant's Filings

Winston & Strawn LLP — one of the largest and most sophisticated law firms in the United States — filed a detailed Motion to Vacate Default that methodically addressed service, notice, and

the basis for Defendant's claimed ignorance of this litigation. That motion does not mention Mordecai Goldstein. It does not address his role as General Counsel. It does not acknowledge that he is listed at 246 Fifth Avenue — the same building to which Plaintiff's process was delivered.

This omission was not an oversight. Sophisticated counsel at a major law firm does not accidentally omit the client's own General Counsel from a notice argument when the General Counsel operates from the same building as the client's registered address. The omission was deliberate — because naming Goldstein requires explaining why the General Counsel of a multi-million dollar enterprise, professionally stationed in the same mail hub building as his client's registered address, never received or acted upon legal process delivered to that building. There is no explanation that helps Defendant. So they omitted him entirely.

This deliberate omission is itself evidence of consciousness of the notice defect. It demonstrates that Defendant and its counsel knew the Goldstein connection was damaging and made a strategic decision to hide it from this Court. This Court should draw the appropriate inference.

**3. Corporate Estoppel — Active NY Filing While Claiming Address Ignorance**

Defendant has maintained an active New York limited liability company with the New York Secretary of State Division of Corporations since 2005 — filing annual reports, paying taxes, and preserving its corporate status through deliberate affirmative acts. A corporation that actively maintains its legal existence through the Secretary of State has an inescapable obligation to ensure its registered address is functional and monitored. Defendant cannot file annual reports to preserve its corporate benefits while simultaneously abandoning the address it filed those reports under. That is willful neglect, not excusable inadvertence. See Eisenberg v. Propp, 204 So. 3d 146 (Fla. 4th DCA 2016).

**► EXHIBIT 4 — NY SOS Corporate Registry — Larva Labs LLC Active Filing Since 2005**

**► EXHIBIT 12 — NY and FL Registered Agent / Address Statutory Requirements**

◆ *NON-WAIVER DECLARATION: The arguments set forth regarding the mail hub and estoppel arguments — including the 234/246 Fifth Avenue same-building analysis, the deliberate omission of General Counsel Goldstein, and the NY corporate filing evidence are presented solely to demonstrate this Court's lack of subject matter jurisdiction and the mandatory nature of remand under 28 U.S.C. § 1447(c). Nothing herein constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal jurisdiction, or any acknowledgment that Defendant's removal was timely, proper, or lawful. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant. Plaintiff expressly preserves all rights under 28 U.S.C. § 1447(c).* ◆

## C. PLAINTIFF'S COURTESY COPY CANNOT RESET AN ALREADY-EXPIRED REMOVAL DEADLINE

### DEFENDANT CANNOT WEAPONIZE PLAINTIFF'S GOOD FAITH AGAINST PLAINTIFF

### 1. The Courtesy Copy Was Not Service — It Was Plaintiff's Voluntary Generosity

Defendant admits in its filings that it first received notice of this litigation on April 23, 2026, when the NODE Foundation forwarded a courtesy copy of the Complaint that Plaintiff had voluntarily sent to the NODE Foundation. Defendant seeks to use April 23 as the operative notice date — claiming this starts a new 30-day removal window extending to May 23, 2026.

This argument fails on every level. Plaintiff's courtesy copy to the NODE Foundation was exactly that — a courtesy. It was not service of process. It was not formal notice under any statute. It was not directed at Defendant. It was a voluntary, good-faith communication by Plaintiff to a third-party organization — the NODE Foundation — as a gesture of professional courtesy. Plaintiff did not send it to Larva Labs. Plaintiff did not intend it as a substitute for formal service. It was not so designated, it was not so labeled, and it carries no legal weight as service.

### 2. 'Or Otherwise' Does Not Encompass Third-Party Voluntary Forwards

28 U.S.C. § 1446(b) provides that the 30-day window runs from 'receipt by the defendant, through service or otherwise, of a copy of the initial pleading.' Courts have interpreted 'or otherwise' to mean receipt through channels that put the defendant on meaningful notice in a legally attributable manner — not receipt through a third-party's voluntary, unsolicited forwarding

of a document the plaintiff sent elsewhere. A plaintiff's courtesy to a third party that the third party elects to relay is not receipt 'by the defendant' within the meaning of § 1446(b). It is a chain of events entirely outside Plaintiff's control and entirely outside the statutory framework.

### 3. Even Accepting April 23 — The Original Deadline Had Already Closed

More fundamentally: it does not matter. The legally operative service date is March 3, 2026 — the date on which Plaintiff perfected substituted service through the Florida Division of Corporations. The 30-day removal clock ran from March 3 to April 2, 2026. That window closed. It closed before the Clerk's Default was entered on April 13. It closed before Plaintiff filed his Motion for Default Final Judgment on April 22. It closed before the NODE Foundation forwarded the courtesy copy on April 23. By the time Defendant claims to have received any form of notice, the removal window had been closed for twenty-one (21) days.

Defendant cannot replace the statutory service date with a courtesy copy date to rescue an already-expired removal deadline. The statute does not permit it. The case law does not support it. And allowing such a substitution would create a perverse incentive structure: plaintiffs who extend professional courtesies to third parties would be punished by having their statutory deadlines reset against them. No court should adopt a rule that punishes good faith and rewards bad faith.

### 4. Defendant Cannot Weaponize Plaintiff's Generosity

Plaintiff sent that courtesy copy in good faith — as a matter of professional notice to an organization that had acquired intellectual property relevant to this dispute. Defendant waited in silence until an imminent default judgment forced its hand, then reached for that courtesy copy as a legal lifeline. Allowing this result would mean that every pro se plaintiff who acts in good faith by providing voluntary notice beyond what the law requires does so at the risk of having a statutory deadline reset against them. This Court should not permit Defendant to weaponize Plaintiff's generosity as a mechanism for escaping the consequences of Defendant's own deliberate inaction.

*under 28 U.S.C. § 1447(c). Nothing herein constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal jurisdiction, or any acknowledgment that Defendant's removal was timely, proper, or lawful. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant. Plaintiff expressly preserves all rights under 28 U.S.C. § 1447(c).* ◆

## III. MEMORANDUM OF LAW

### A. THE REMOVAL WAS FILED 28 DAYS LATE — FATAL, INCURABLE, MANDATORY REMAND

**1. The 30-Day Statutory Deadline Is Absolute**

28 U.S.C. § 1446(b) requires a notice of removal to be filed 'within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading.' The Eleventh Circuit has held this deadline is strict, mandatory, and non-extendable by any court, any party, or any agreement. See Snapper, Inc. v. Redan, 171 F.3d 1249, 1253 (11th Cir. 1999). All ambiguities must be resolved in favor of remand. See Russell Corp. v. American Home Assur. Co., 264 F.3d 1040, 1050 (11th Cir. 2001).

Service was perfected March 3, 2026. The removal deadline was April 2, 2026. Defendant filed on April 30, 2026 — twenty-eight (28) days late. There is no cure. There is no exception. There is no discretion. Remand is mandatory.

**2. Untimely Removal Strips This Court of All Jurisdiction**

An untimely removal is a jurisdictional defect that strips this Court of power to hear or decide any motion filed by Defendant. This Court may not reach Defendant's Motion to Vacate Default, Motion to Dismiss, or Motion for Extension of Time. The only permissible action upon finding an untimely removal is to return the case to state court. See Snapper, 171 F.3d at 1253.

*◆ NON-WAIVER DECLARATION: The arguments set forth regarding the untimely removal argument — including the March 3 service date, the April 2 deadline, the April 30 filing date, and all cited authority are presented solely to demonstrate this Court's lack of subject matter jurisdiction and the mandatory nature of remand under 28 U.S.C. §*

Florida resident from Florida using tools made available by Defendant — each constituting a new Florida business contact renewing the accrual period.

| |
|---|
| ◆ *NON-WAIVER DECLARATION: The arguments set forth regarding the statute of limitations arguments — presented solely to rebut Defendant's claimed defense, not to accept federal jurisdiction or waive any remand right are presented solely to demonstrate this Court's lack of subject matter jurisdiction and the mandatory nature of remand under 28 U.S.C. § 1447(c). Nothing herein constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal jurisdiction, or any acknowledgment that Defendant's removal was timely, proper, or lawful. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant. Plaintiff expressly preserves all rights under 28 U.S.C. § 1447(c).* ◆ |

## F. FRAUDULENT CONCEALMENT INDEPENDENTLY TOLLS ANY LIMITATIONS PERIOD

### WALLET BLOCKING — V1 SUPPRESSION — INTERNAL TRANSACTION CONCEALMENT

### 1. Plaintiff Created the V1 Collection From Sebring, Florida

In June 2017, Plaintiff — operating from 1712 Theon Street, Sebring, Florida 33870 — accessed the CryptoPunks user interface through the internet and, using tools made publicly available by Defendant, broadcast the original CryptoPunks V1 collection onto the Ethereum blockchain. Plaintiff made every creative and technical decision: the number of NFTs, trait types, trait combinations, backgrounds, and facial expressions. Plaintiff set the smart contract to allow gas-fee-only claiming — a deliberate act to secure assets across multiple wallets for family and friends based on Plaintiff's understanding of the blockchain's coming value. No other individual made these choices. No other individual broadcast this data. The smart contracts hold the record.

### 2. Ten Days Later — V2 Deployed Using Plaintiff's Data — Wallet Blocked

On or about June 23, 2017 — only ten (10) days after Plaintiff's original broadcast — Defendant deployed V2 CryptoPunks using the same underlying data established by Plaintiff's broadcast, declared V1 to contain a 'bug,' and suppressed V1 marketplace activity. Defendant used the $660,000 proceeds from a private V1 sale to fund an exchange-wide suppression campaign that

denied market recognition to the genesis collection. Plaintiff's wallet — 0x26f744711ee9e5079CbEaF318ba8a8e938844de6 — was blocked from meaningful user-facing access, preventing Plaintiff from modifying the V1 collection settings through the same interface used to set the original parameters. Plaintiff was locked out of his own creation.

► **EXHIBIT 8 — Forensic Ledger — V1 and V2 Smart Contract Timeline — Original Broadcast and Copy**

***✦ INSERT: Print from Etherscan: V1 smart contract 0xf4910c763ed4e47a585e2d34baa9a4b611ae448c with June 2017 deployment date. V2 smart contract 0xb47e3cd837dDF8e4c57F05d70Ab865de6e193BBB with deployment date. Print 3 copies. This is Exhibit 8.***

### 3. Public Face Concealed Ongoing Internal Transactions

Plaintiff's wallet has displayed only hundreds of dollars in apparent face value since 2017 — a public representation that was false. Internal blockchain records from Etherscan.io and Polygonscan reveal ongoing activity, transfers, and interactions that the public-facing display does not reflect. This disparity between public face and internal transaction record is direct evidence of deliberate technical concealment designed to prevent Plaintiff from understanding the true scope of what was taken. The fraudulent concealment doctrine tolls the limitations period from the date Plaintiff knew or reasonably should have known of the concealment. That date is tied to Plaintiff's forensic investigation, not to 2017. See Fla. Stat. § 95.11(3)(j).

► **EXHIBIT 10B — Blockchain Transaction Ledger — Internal vs. Public Face Disparity**

◆ *NON-WAIVER DECLARATION: The arguments set forth regarding the fraudulent concealment arguments — including the V1 broadcast, the ten-day V2 deployment, the wallet blocking, and the public face versus internal transaction disparity are presented solely to demonstrate this Court's lack of subject matter jurisdiction and the mandatory nature of remand under 28 U.S.C. § 1447(c). Nothing herein constitutes a waiver of Plaintiff's remand rights, a general appearance, a submission to federal jurisdiction, or any acknowledgment that Defendant's removal was timely, proper, or lawful. This Court must rule on jurisdiction before — and to the complete exclusion of — any substantive motion filed by Defendant. Plaintiff expressly preserves all rights under 28 U.S.C. § 1447(c).* ◆

## G. DEFENDANT HAD ACTUAL KNOWLEDGE OF VALUE EXCEEDING $75,000 AT ALL TIMES

### 1. The $660,000 V1 Sale

Under the continuous tort and continuous accrual doctrines, where a defendant's wrongful conduct is not a single discrete act but an ongoing pattern of deprivation, the statute of limitations renews with each new wrongful act. Defendant's platform has processed CryptoPunks transactions every hour of every day from June 2017 through May 2026. Each transaction constitutes a new act of deprivation — a new denial of Plaintiff's authorship recognition, a new benefit derived from Plaintiff's original work, and a new renewal of the accrual period. There is no expired limitations period because the wrong has never stopped.

**► EXHIBIT 8 — Forensic Ledger — Smart Contract Interaction Evidence — 2017 Through 2026**

**► EXHIBIT 10B — Blockchain Transaction Ledger — Complete Continuous Transaction Timeline**

***✦ INSERT: Print Etherscan.io transaction history for wallet 0x26f744711ee9e5079CbEaF318ba8a8e938844de6 and for the V1 CryptoPunks smart contract. Show continuous activity from June 2017 to May 2026. Label 'Exhibit 10B.' Print 3 copies.***

**2. Defendant's 'Other Paper' Arguments Also Fall Outside Their Own Time Frame**

Defendant has introduced various post-2021 communications — text messages, the NODE Foundation forwarding, and what it characterizes as 'other paper' — as evidence in support of its positions in this Court. These communications, by Defendant's own limitations theory, would themselves fall outside the four-year limitations period Defendant asserts. Defendant cannot selectively invoke a limitations bar against Plaintiff while simultaneously using post-limitations communications as ammunition in its own motions. The limitations frame applies equally to both sides — and it applies to neither, because the wrong is continuous and the accrual period renews with every transaction.

**3. Plaintiff's KYC-Verified Florida Interactions Are Documented Commercial Acts**

Cryptocurrency platform transactions above minimum thresholds require KYC verification: government-issued photo ID, email address, and phone number. Plaintiff completed multiple rounds of KYC verification in connection with the creation, broadcast, and management of digital assets. These are identity-verified, documented commercial engagements conducted by a

While publicly declaring V1 CryptoPunks worthless, Defendant sold forty (40) V1 CryptoPunks for over $660,000. The entity that suppressed V1 value for public consumption was privately selling V1 assets at premium prices. This is not ignorance of value — it is exploitation of value with full knowledge. Defendant then used those proceeds to further suppress the very market it had just profited from. Any assertion by Defendant that it was unaware of the amount in controversy is directly refuted by this transaction record.

**► EXHIBIT 9A — V1 Sale Documentation — 40 CryptoPunks for $660,000+ — Published Market Evidence**

***✦ INSERT: Print the NFT Ethics article or any published reporting on the Larva Labs V1 sale. Print comparable V1 sales data from Opensea or blockchain explorers. Print 3 copies. This is Exhibit 9A.***

## 2. Christie's, Sotheby's, and the Public Auction Record

CryptoPunks have sold at Christie's and Sotheby's for millions of dollars. These are documented, widely published events. Plaintiff's Affidavit of Damages, filed in state court and transferred to this Court under § 1446(a), establishes total damages of $9,159,898.44. The proposition that Defendant — a company that sold 40 V1 assets for $660,000 and watched individual CryptoPunks sell at Christie's — was unaware that 141 V1 assets in a documented wallet exceeded $75,000 is not credible.

**► EXHIBIT 11 — Market Value Evidence — Auction Records — Comparable Sales Data**

***✦ INSERT: Print any Christie's or Sotheby's records showing CryptoPunks sale prices. Print Opensea comparable V1 sales data. Print 3 copies. This is Exhibit 11.***

## 3. The Goldstein Letter and Certified Mail Tracking

Plaintiff transmitted courtesy copies of state court filings to General Counsel Goldstein via certified mail with return receipt requested and documented tracking numbers. Delivery was confirmed. This is direct notice to Defendant's own legal representative — before the Clerk's Default was entered. Defendant cannot claim ignorance of the case while its General Counsel received certified mail about it.

**► EXHIBIT 9B — Goldstein Letter — Certified Mail Tracking Numbers — Delivery Confirmations**

***✦ INSERT: Print USPS.com tracking confirmation for certified mail sent to Goldstein showing delivered status with date and time. Print 3 copies. This is Exhibit 9B.***

**/s/ Robin Earl Paulk**
**ROBIN EARL PAULK**
Plaintiff, Pro Se
4232 Ponce de Leon Blvd
Sebring, Florida 33872
dorkiesnfts@gmail.com | (863) 202-4716
**Date: June 2, 2026**

Signature: ______________________________

(863) 202-4716
```text
CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Omnibus Motion to Remand, Master Pleading Index, and Supporting Memorandum of Law has been furnished via U.S. Certified Mail / Priority Mail Express on this 30th day of May, 2026, to the following counsel of record for Defendants:

Daniel Tramel Stabile, Esq.
Hamza B. Rashid, Esq.
WINSTON & STRAWN LLP
200 S. Biscayne Blvd., Suite 1700
Miami, FL 33131
Attorneys for Defendant Larva Labs, LLC

Dated: JUNE 1ST 2026
JUNE 1ST 2026
                                   ________________________
                                   ROBIN EARL PAULK, Pro Se
                                   4232 PONCE DE LEON
                                   SEBRING, FLORIDA 33872
                                   DORKIESNFTS@GMAIL.COM
```