**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 26-14147-CIV-CANNON/Maynard**

**ROBIN EARL PAULK,**

Plaintiff,

v.

**LARVA LABS, LLC,**

Defendant.

_____________________________________/

# OMNIBUS ORDER

**THIS CAUSE** comes before the Court upon various filings, including Defendant's Motion to Vacate [ECF No. 4]; Plaintiff's Motion to Remand [ECF No. 26]; and Plaintiff's "Standalone Motion to Extract and Isolate Evidence" [ECF No. 33]. The Court has reviewed the Motions and the related briefing and attachments thereto [ECF Nos. 4, 4-1 through 4-12, 26, 26-1 through 26-3, 31, 32, 33, 33-1, 34, and 34-1 through 34-3]. Following review, Plaintiff's Motion to Remand [ECF No. 26] is **DENIED**; Defendant's Motion to Vacate [ECF No. 4] is **GRANTED**; the Clerk's default previously entered in state court [ECF No. 1-1 p. 44] is **VACATED**; and Plaintiff's "Standalone Motion to Extract and Isolate Evidence" [ECF No. 33] is **DENIED**. On or before **June 24, 2026**, Defendant shall refile its Motion to Dismiss (previously filed at docket entry 9) on the docket [*see* ECF No. 9]. Plaintiff may oppose the forthcoming Motion within the time permitted by the local rules, *see* S.D. Fla. 7.1(c), but shall carefully comply with the directives and constraints as articulated in this Order in formulating a response. Noncompliance may result in dismissal with prejudice of this action without further notice.

## BACKGROUND AND PROCEDURAL HISTORY

This case presents a dispute over Defendant's alleged fraudulent interference with Plaintiff's Non-Fungible Tokens ("NFTs") [ECF No. 1-1 pp. 6–7]. Plaintiff's Complaint, initially filed in Florida state court on January 20, 2026, alleges that in June 2017, Plaintiff used a publicly available software tool to generate 141 NFTs on the Ethereum blockchain [ECF No. 1-1 ¶¶ 5, 7]. Each of these NFTs represents ownership of a unique CryptoPunk that was part of the first version of CryptoPunks ("V1"), a pioneering generative art project consisting of 24x24 pixel portraits [ECF No. 1-1 ¶¶ 5, 7].[1] To create the NFTs, Plaintiff paid only nominal "gas fees" (i.e., fees paid to third parties who validate transactions on the Ethereum blockchain) [ECF No. 1-1 ¶ 7], and the NFTs "have remained in [a] dormant wallet" controlled to this day by Plaintiff [ECF No. 1-1 ¶ 8].

Plaintiff alleges that, on June 23, 2017, Defendant "deployed" a second version of CryptoPunks ("V2"), "claiming V1 contained a 'bug'" [ECF No. 1-1 ¶ 9]. The Complaint then asserts that Defendant "suppressed V1 marketplace activity while promoting V2 as the sole authoritative collection, rendering Plaintiff's assets commercially impaired" [ECF No. 1-1 ¶ 10]. Based on these allegations, the Complaint asserts causes of action for fraudulent concealment (Count I), unjust enrichment (Count II), declaratory relief (Count III), and injunctive relief (Count IV), seeking unspecified monetary damages and an injunction [ECF No. 1-1 pp. 6–7].

On January 29, 2026, Plaintiff attempted to serve Defendant with the summons and a copy of the Complaint at an address listed with the New York Division of Corporations as Defendant's official registered business address [ECF No. 1-1 p. 15 (summons)]. The process server was unable to effectuate proper service at that address, however, and noted that:

> THE COMPANY/RECIPIENT DOES NOT EXIST AT THE LOCATION. ADDRESS LED TO A MAIL FORWARDING OFFICE NAMED THE YARD. I

[1] *See also* https://en.wikipedia.org/wiki/CryptoPunks#cite_note-1 (last visited on 6/17/2026).

> SPOKE WITH THE RECEPTIONIST WHO ADVISED THAT THE COMPANY/RECIPIENT NO LONGER FORWARDS ANY MAIL TO THIS LOCATION FOR THE PAST 2-3 YEARS.

[ECF No. 1-1 p. 15]. After that sole attempt at service, Plaintiff moved the state court for permission to effectuate service on Defendant through the Florida Secretary of State, pursuant to Fla. Stat. §§ 48.161 and 48.181 [ECF No. 1-1 pp. 22–23]. The court granted that Motion on February 9, 2026, without any reasoning, except to say that "Plaintiff ha[d] exercised reasonable diligence and that personal service ha[d] proven impracticable" [ECF No. 1-1 p. 25]. Acting pursuant to that authority, Plaintiff thereafter effectuated service on Defendant through the Florida Secretary of State [ECF No. 1-1 pp. 34–43]. On April 13, 2026, after Defendant had been served and failed to respond to the Complaint as required by law, the state court clerk entered a clerk's default in favor of Plaintiff [ECF No. 1-1 p. 44]. Plaintiff thereafter filed an "Affidavit of Damages," explaining that Defendant had harmed Plaintiff to the effect of $9,116,622.90 by interfering with the fair market value of Plaintiff's crypto assets, and also awarding prejudgment interest of $43,275.54—for a total of $9,159,898.44 in damages [ECF No. 1-1 pp. 87–89].

Just one day after Plaintiff filed his Affidavit of Damages, Defendant learned of this litigation for the first time through a courtesy copy of the Complaint forwarded to it by an unrelated third party [ECF No. 4-2]. Defendant then promptly appeared in state court, removed this action to this Court [ECF No. 1], and immediately moved to vacate the state court default on May 1, 2026, highlighting its recent appearance in the case [ECF No. 4]. After some back-and-forth on the docket, Plaintiff then filed a Motion to Remand to state court, claiming that Defendant had removed this case outside the thirty-day statutory period for removal under 28 U.S.C. § 1446(b)(1) [ECF No. 26]. Plaintiff also filed a "Standalone Motion to Extract and Isolate Evidence," which asks the Court "to isolate, evaluate, and formally consider a singular, dispositive chronology within

the record that establishes pre-default actual notice to Defendant's corporate leadership" [ECF No. 33]. All three Motions are ripe for judicial determination, and the Court adjudicates each below.

## DISCUSSION

### A. Plaintiff's Motion to Remand based on untimely removal fails.

In Plaintiff's Motion to Remand, Plaintiff argues that the Court should remand this action because Defendant's Notice of Removal was filed past the statutory 30-day timeline for removal [ECF No. 26]; *see* 28 U.S.C. § 1446(b)(1). Defendant opposes Remand, arguing that it first became aware that the amount in controversy might exceed $75,000 in this action on April 22, 2026, when Plaintiff filed his Affidavit of Damages, making its April 30, 2026, Notice of Removal timely [ECF No. 34]. Following review, the Court agrees with Defendant.

District courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332. When a case is initially filed in state court but meets the criteria for diversity jurisdiction, defendants may remove the case to federal court "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). There is, however, an exception to the thirty-day removal requirement; "if the case . . . is not [initially] removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Here, Plaintiff claims that the 30-day removal clock began running on March 3, 2026, when Plaintiff purportedly perfected substituted service on Defendant through the Florida Secretary of State [ECF No. 26].[2] That would mean that the removal deadline expired on April 2, 2026, which would make Defendant's April 30, 2026 Notice of Removal twenty-eight days late.

As Defendant correctly explains, however, Plaintiff neglects the statutory exception to the thirty-day period outlined in section 1446(b)(3). That statutory exception applies here, because as pled, Plaintiff's Complaint was not initially removable when Defendant was allegedly served. The Complaint alleges only that the amount in controversy "exceeds $50,000" [ECF No. 1-1 ¶ 3], which is less than the $75,000 diversity threshold, and the Complaint's own allegations—that Plaintiff obtained the NFTs at issue through "gas-only" transactions for which he paid only nominal transaction costs (and still holds every one of them) [ECF No. 1-1 ¶¶ 7–8]—made even $50,000 appear implausibly high. The Complaint identifies no payment to Defendant, no loss, and no cognizable measure of damages, let alone one exceeding $75,000. Nor does the Complaint identify the at-issue NFTs or their purported value, making it impossible to even assess the basis for the Complaint.

It was not until April 22, 2026—when Plaintiff filed his Affidavit of Damages in state court—that Defendant could first ascertain that the amount in controversy in this case exceeded $75,000. In that Affidavit, Plaintiff calculated his claimed damages at $9,116,622.90 in principal and $9,159,898.44 including prejudgment interest [ECF No. 1-1 pp. 87–89]. In other words, the Affidavit of Damages was the first "other paper" from which the case became ascertainably

[2] The parties also vigorously dispute whether Defendant was properly served in this matter [ECF Nos. 26, 34]. The Court need not reach the viability of service in this Order. Defendant may re-raise this argument in an appropriate Rule 12 Motion [*see* ECF No. 11 (denying without prejudice Defendant's timely Motion to Dismiss but allowing Defendant to refile that motion, within the deadlines set by the Court following resolution of Defendant's Motion to Vacate Default")].

removable under § 1446(b)(3). *See* 28 U.S.C. § 1446(c)(3)(A) ("If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding . . . shall be treated as an 'other paper' under subsection (b)(3).").

Defendant filed its Notice of Removal on April 30, 2026, eight days after Plaintiff filed the Affidavit of Damages [ECF No. 1]. And because the Court has concluded that the filing of the Affidavit of Damages started the removal clock, Defendant's removal was plainly within the 30-day window under § 1446(b)(3). *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1212–13 (11th Cir. 2007) (holding that the 30-day removal clock under § 1446(b) runs from the defendant's receipt of the document that provides the basis for removal). Thus, Defendant's removal of this action was timely.[3]

Accordingly, Plaintiff's Motion to Remand [ECF No. 26] is **DENIED**.

**B. Defendant's Motion to Vacate is granted because Defendant has shown good cause to vacate the default entered against it in state court.**

The Court next considers Defendant's Motion to Vacate, filed just one day after removal to this court on May 1, 2026 [ECF No. 4]. The Motion seeks vacatur of the clerk's default entered against Defendant in state court, prior to removal [ECF No. 4]. Plaintiff opposes the Motion, arguing that the state court clerk properly entered default against Defendant on April 13, 2026,

[3] In the opening paragraph of the Motion to Remand, Plaintiff also seems to argue that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 [ECF No. 26 p. 1]. Though the Motion does not elaborate, an attachment to the Motion appears to suggest that Plaintiff (or his artificial intelligence counsel) believes the citizenship of Defendant's counsel has some bearing on diversity of citizenship in this case [ECF No. 26-1 p. 7]. Subject matter jurisdiction is not at issue. The only parties in this case are Plaintiff and Defendant, and as Defendant explains in opposition to the Motion, there is no dispute that Plaintiff is a Florida citizen, that Defendant is a New York citizen [ECF No. 34 p. 3], and that Plaintiff himself submitted a sworn affidavit of damages calculating his claimed damages at $9,159,898.44 [ECF No. 34 p. 3].

because Defendant was unduly dilatory in responding to Plaintiff's Complaint after service [ECF Nos. 32, 33].

At the outset, the Court notes that when a case is removed from state court to federal court, the federal court takes the case as through everything done in the state court had been done in the federal court. *See Savell v. Southern Ry. Co.*, 93 F.2d 377, 379 (5th Cir. 1937). Because of that reality, federal courts have "authority under Federal Rule of Civil 55(c), in accordance with Rule 60(b), to vacate a default entered in the state court." *Gossamer Wing, LLC v. Bank of New York Mellon*, No. 21-80319-CIV, 2021 WL 857527, at *3 (S.D. Fla. Mar. 7, 2021) (Cannon, J.) (citing Fed. R. Civ. P. 55(c) and Fed. R. Civ. P. 60(b)).

Under Rule 55(c), courts "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "Good cause" is "a mutable standard, varying from situation to situation." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (quotations omitted). To determine good cause, "federal courts commonly apply the following guidelines: (1) whether the default was the result of culpable conduct on the part of the defendant; (2) whether the plaintiff would be prejudiced if the default should be set aside; and (3) whether the defendant presents a meritorious defense." *See Sobkowski v. Wyeth, Inc.*, No. 04-cv-96-OC-10, 2004 WL 3569703, at *2 (M.D. Fla. June 4, 2004). Additionally, the Eleventh Circuit recognizes a "strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). As defaults are disfavored, a defaulting party need only make a "bare minimum showing" of good cause. *See Choi v. Ace Am. Ins. Co.*, No. 21-cv-10020, 2021 WL 2953630, at *4 (S.D. Fla. June 29, 2021) (quotation omitted).

Following review of the parties' arguments and the record more generally, the Court finds good cause to vacate the default judgment entered against Defendant in state court. First, the Court

is persuaded that Defendant's default did not result from "an intentional or reckless disregard for the judicial proceedings," *SEC v. Johnson*, 436 Fed. App'x 939, 945 (11th Cir. 2011), given its credible representations that it was not aware of this action until it received a courtesy copy of the complaint on April 23, 2026 [*see* ECF No. 4-2 (sworn declaration from the Defendant's managing member explaining that it was unaware of the state Court action until April 23, 2026)]. Second, vacatur will not prejudice Plaintiff's ability to prosecute this case; Plaintiff has not made any showing whatsoever that vacatur will "result in a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Morford v. Cattelan*, No. 21-cv-20039, 2022 WL 1084733, at *5 (S.D. Fla. Mar. 22, 2022) (quotation omitted). Third and finally, Defendant raises serious facial challenges to Plaintiff's complaint, including a procedural statute of limitations defense that likely could bar all of Plaintiff's claims [*see generally* ECF No. 4 pp. 5–9]. For these reasons, and in light of the "strong policy of determining cases on their merits" in the Eleventh Circuit, *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1295, the Court finds good cause to vacate the default entered against Defendant in state court.

Defendant's Motion to Vacate [ECF No. 4] is **GRANTED**, and the Clerk is directed to **VACATE** the default entered in state court [ECF No. 1-1 p. 44].

### C. Plaintiff's "Standalone Motion to Extract" is denied as procedurally improper, and Plaintiff is prohibited from any further filings (absent Court permission) pending resolution of Defendant's forthcoming Motion to Dismiss.

Finally, the Court considers Plaintiff's "Standalone Motion to Extract and Isolate Evidence of Pre-Default Actual Notice to General Counsel" [ECF No. 33]. The Motion asks the Court "to isolate, evaluate, and formally consider a singular, dispositive chronology within the record that establishes pre-default actual notice to Defendant's corporate leadership" [ECF No. 33 p. 1].

Because there is no intelligible basis to award such relief in either the Federal Rules of Civil Procedure or the local rules of this district, the Motion is **DENIED**.

As a separate matter, the Court is concerned more generally about the plethora of legal filings seemingly prepared by artificial intelligence and submitted by Plaintiff that make frivolous and unsupported arguments to the Court [*see, e.g.*, ECF Nos. 15, 16, 17, 18, 19, 26, 26-1, 31, 32, 33]. As an example, Plaintiff makes the obviously incorrect submission that the citizenship of Defendant's counsel can be considered in determining complete diversity [*see* ECF No. 26-1 p. 7]; *see Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (holding complete diversity is tested by determining the citizenship of the "real parties to the controversy"). And many of Plaintiff's filings contain disclaimers to the Court, expressly certifying "that every legal authority, statutory provision, rule of procedure, and historical case citation referenced within [the filings] has been independently read, analyzed, verified, and cross-referenced against official federal and state legal repositories" [*see, e.g.*, ECF No. 33 p. 1]. In each of these filings, "Plaintiff guarantees that every cited case stands as valid, binding law within the United States Supreme Court and the Eleventh Circuit Court of Appeals, possesses an active and unchecked standing, and accurately represents the procedural postures asserted" [*see, e.g.*, ECF No. 33 p. 1]. And he expressly warrants that he has not included any "fictitious or unverified citations," and that he has "manually double-checked" each case to ensure that it "support[s] Plaintiff's cause perfectly, ensuring that no unverified or 'hallucinated' data is presented to the Court" [*see, e.g.*, ECF No. 33 p. 1].

No doubt Plaintiff's artificial intelligence legal counsel told him to say all this. And the AI certainly had the right idea—litigants should not make misrepresentations to the Court. Unfortunately, Plaintiff did not practice what his artificial counsel preached. Instead, he cites to "Snapper v. Redan, 523 U.S. 83 (1998)" [ECF No. 31 p. 5]—a case which does not exist—for the

proposition that "when a company's chief legal representative has been sent formal notification at a publicly advertised professional office location, the entity cannot assert an administrative breakdown within its secondary commercial mail hubs as an equitable basis to vacate an otherwise valid default" [ECF No. 33 p. 3]. Notwithstanding the made-up citation, the case Plaintiff means to cite, *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1251 (11th Cir. 1999), is an Eleventh Circuit case that says nothing of the sort. Instead, *Snapper* established that federal appellate courts have jurisdiction to review remand orders based on the enforcement of contractual forum selection clauses. *Id.* at 1260. It does not mention vacatur, or default, or even mail—and it certainly does not stand for the extremely narrow proposition for which Plaintiff cites it.

In light of all this, Plaintiff has violated his duty of candor to the Court and has committed a Rule 11 violation. *See* Fed. R. Civ. P. Rule 11; *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("Once a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure"). The Court imposes filing sanctions on Plaintiff as set forth below.

## CONCLUSION

In light of the relief articulated herein, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Motion to Remand [ECF No. 26] is **DENIED**.
2. Defendant's Motion to Vacate [ECF No. 4] is **GRANTED**. The Clerk's default, previously entered in state court on April 13, 2026 [ECF No. 1-1 p. 44], is **VACATED**.
3. Plaintiff's "Standalone Motion to Extract" [ECF No. 33] is **DENIED**.
4. On or before **June 24, 2026**, Defendant may refile its Motion to Dismiss Plaintiff's Complaint [*see* ECF No. 9 (Motion to Dismiss); ECF No. 11 (denying without prejudice Defendant's timely Motion to Dismiss but allowing Defendant to refile that motion, within

the deadlines set by the Court following resolution of Defendant's Motion to Vacate Default)].

5. **In light of Plaintiff's Rule 11 violations, as detailed above, and in the exercise of the Court's inherent authority to manage its docket, the Court imposes filing sanctions as follows**:

    a. Until Defendant's forthcoming Motion to Dismiss is resolved, Plaintiff shall not file any motion or submit any item on the docket unless Plaintiff first files a motion for leave to file the designated motion/filing and obtains the Court's approval to file the requested material. Except as stated in this Order, any motion or item on the docket that is filed by Plaintiff without this mandatory judicial pre-approval will be stricken without further notice.

    b. Notwithstanding the above requirement, Plaintiff may file an opposition to Defendant's forthcoming Motion to Dismiss in accordance with the local rules of this district. *See* S.D. Fla. L. R. 7.1(c). **Due to Plaintiff's prior artificial intelligence offenses, any such opposition shall be handwritten, and shall refrain from containing any inaccurate citations or hallucinated authority**. **The failure to comply with any aspect of this Order may cause the Court to grant the forthcoming Motion to Dismiss by default**.

**ORDERED** in Chambers at Fort Pierce, Florida, this 18th day of June 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record